We're next going to hear argument in 22-1088, Michelle Henry v. Capital One. Thank you so much. I understand everybody's here and ready to go. And, Ms. Henry, I understand that you would like to have one minute for rebuttal. Yes. Could you just do me a favor? On the right side of the lectern, there's a little switch that moves the lectern up and down. Mr. White can show you. And that way, you just move the microphone close so we can hear everything you're saying. Maybe Mr. White can help. Okay. And I'll ask opposing counsel when it's your turn. Same thing, take a second to adjust the microphone. Yeah, a minute is fine. Okay. Just direct those. You can bend the microphones up. There we go. That way we can hear you nice and clear. Okay. Good afternoon. Please start. Good afternoon, everyone. My name is Michelle Henry, and I'm here to represent myself against Capital One Bank. Capital One illegally, without my knowledge, took my property out of my safe deposit box and do not want to return it. I have exhausted all of my resources, and I'm here to plead my case. On March 22, I went to access my box, and to my surprise, it was drilled open into. I was up to date on all of my fees, my annual payments for the past five years. The bank employees explained that they didn't know why the box was drilled. They have absolutely no record. They couldn't tell me the time it was drilled, when it was drilled, why it was drilled, and they had absolutely no records of my belongings. May I ask, Ms. Henry, are they disputing that it was drilled, or have they admitted to you that it was drilled? They admitted it was drilled. Okay. And can you also let me know how you know of the amount that was in the box? I've been comfortable saving my belongings at home, so I decided to place it in a safe deposit box within the bank's control and safeguarding. And if someone asked you to prove how much money was in there, like the dollar amount, what would be—how would you do that? Well, I honestly worked, and I saved. The whole argument about this case is the bank had no legal reason to drill into my safety deposit box, and it's also stated in their contract as well. So if you don't mind, I'll explain it. So the liability of the bank with respect to the property, which was my property, which happened to be cash. I declared exactly what it had. I never declared anything other than what was in my box. And it was cash. I came truthfully, and I declared exact amount, hoping that they can—they said it can be—the manager said that if they had cash in a box that they saw it, they would put it in a jail. So I declared the exact amount. The bank had an ordinary care by their employees, so they needed—their employees had a care to safeguard my safe and all of my contents, which is my property in the bank. The bank in performing their duties in preventing the opening of the safety deposit box during the term of the lease by anyone other than the lease agent or person authorized by law. It also said in stating, when I read the contract, I was under the impression that it would be—my box cannot be opened at all by anyone outside of the bank. There were some exceptions where they could open your safety deposit box that were in the agreement, such as notice given to you or your agent when the rental fee has not been paid. I know that's not an issue here. Right. The second was to relocate the safety deposit box or after termination of the lease for reasons other than nonpayment, or if they had a court order, for example, or a legal decree order. Exactly. Did they ever claim to you they had any of those bases to open your safety deposit box? None of that. They never—a matter of fact, they never contacted me at all. To my surprise, I walked into the bank, and I discovered it was opened. They had no knowledge of the drilling. They said they had to go into research mode. They took about a month and a half. Then I kept reaching out to them, and they said to me that they realized it's an error on their part, and they were willing to offer $20,000. They didn't even have—like, again, when I placed my contents in the box, I thought it would be safe, and their duty is to safeguard my belongings. I didn't think the bank themselves were willing to fully drill open my box. It wasn't, you know, it wasn't like any ordinary act. Like, it was not fire, or it was not— Did they tell you when they did it? No. Did they know when it was done? When was the last time that you had gone to your box where it was not— It was like a year. I want to say a year before I entered them. Okay. So, Ms. Henry, we—what we'll do is we're going to give you a minute of rebuttal. So the way it works is we've heard your opening statement. We're now going to hear from the bank's lawyer. So you wait right here, and when they're done, we'll call you up. And if there's anything you would like to add after having heard what the bank's lawyer would like to say, we'll hear from you one more time, okay? Okay. Thank you. Great. So, Mr.—is it Steinlein? Yes. Thank you. Okay, Mr. Steinlein. Please, again, adjust the microphones, if you will, and then you can proceed. Yeah, hold it down. I think this is the maximum. That's fine. I think we can hear, probably. Just keep your voice down. May it please the Court, I am Stephen Steinlein of Trout and Pepper Hamilton Sanders, LLP, and I represent the appellee, Capital One, N.A. Your Honors, we ask that the Court affirm Judge Kogan's decision below. There were four causes of action, breach of contract, negligence, gross negligence, and New York GVL Section 349. With respect to the negligence claim and the breach of contract claim, those claims were properly dismissed because of the exculpatory clause within the safe deposit box lease agreement. Yeah, why don't you address the gross negligence clause? I thought that under New York law, it's well established by the New York Court of Appeals that an exculpatory clause cannot bar a gross negligence claim. Is that correct as a general legal proposition? That is correct, Your Honor. Okay. And we don't dispute that. And so is your argument simply that the allegations in the complaint read in the light most favorable to Ms. Henry do not state a cause of action for gross negligence? That's correct, Your Honor. It's a Rule 8, Rule 12b6 issue. There's formulaic allegations of gross negligence. Well, can I just ask about that? I would understand the argument saying it's formulaic if you said, well, I went to my safe deposit box, I opened it, and there was no money in there. Who knows how it's gone, right? But she has alleged something very specific, which is that an employee of the bank admitted that the bank drilled open the safe deposit box. So gross negligence under New York law has to smack of intentional wrongdoing. It seems plausible at this stage of the allegations to say that it's hard to unintentionally drill open a safe deposit box, right? I mean, that can't be an accident. Somebody's just walking around with a drill and all of a sudden it happens. So how is that not a plausible allegation of intentional wrongdoing? Maybe it won't prove out if there's a trial, but how is that not intentional? Thank you, Your Honor. It's not the intentional act of drilling the safe deposit box that creates the issue for dismissal because there can be lawful reasons under the contract to drill. Right, but she's alleged that there's not. Right. It's the second part of the allegation. There's nothing alleged in the complaint that the money went missing intentionally or that the money went missing. So if I could ask one more question to follow up, and then I think Judge Paris has some questions. Right now we're dealing with the plausibility of the allegations in the contract. And if we accept that she has plausibly alleged intentional conduct, that the bank has drilled open a safe deposit box, and she has quite explicitly alleged that none of the contractually permissible reasons to open the box were satisfied, then why is it not a permissible inference, because you can draw inferences, that having engaged in rather extreme conduct of unauthorized drilling open somebody's safe deposit box, one cannot infer at least that the removal of the money is likewise at least reckless? Your Honor, respectfully, I think it's too far of a leap. There could be just a lack of reasonable care that could cause the money. The bank could intentionally drill into the safe deposit box, but it could just simply be a lack of reasonable care to safeguard. Again, now we have to assume, based on this complaint, that the intentional drilling was for an unauthorized reason. We can't assume something contrary to her allegations. We can't assume she didn't pay, or we can't assume that she didn't pay, but you gave notice, or that you had to relocate. So we have to assume that the bank drilled in without authorization, and that allows an inference that they drilled for an improper purpose. Why can you not then infer that if they drilled open someone's safe deposit with an improper purpose, they may have likewise acted with an improper purpose with respect to the contents, because I don't know why else one would drill into a box if not to get at the contents. On a liberal reading of the complaint, I think Judge Kogan's review of the complaint on its face of its pleadings, and Capital One agrees with Judge Kogan, that there was no allegation, even liberally reading the complaint, that Capital One intentionally drilled into the box for the purpose. So let me ask you. Okay, finish your sentence. For the purpose of intentional wrongdoing, or to the reckless disregard of the appellant's rights. A liberal review of the complaint is that the box was drilled in. Yeah, so what is, give me an alternate. An alternate in terms of an example of gross negligence? Give me an alternate reading of a purpose. Again, drawing all inferences in favor of the non-moving party, who's Ms. Henry here, give me the only plausible reading that's somehow a non-reckless purpose. The purpose could be the bank, through an alleged lack of reasonable care, was advised that the box belongs to another customer. The customer indicated, hey, my key's not working. The bank drilled open the box, and the contents went to potentially another customer. Now, I'm not representing that's what occurred here, but I can come up with numerous reasons like that where a box could be drilled open for a reason. But you're the one that has the information. You're the one that has the records. You're the one that, if there is a reasonable reason, should be defending with that. You should have explained to Ms. Henry why the box was drilled open, and you have neglected to do that. It feels to me like you are flipping. Just because you can come up with a plausible reason does not completely eviscerate the motion to dismiss standard. At this point, if you have a good reason for why it was opened that protects your client, why aren't you offering it? Your Honor, I can't speak to why my client, from the customer relations perspective, maybe they could have done a better job and given as much information as they had. But at the end of the day, the issue is— Are you doing an internal investigation? Your Honor, I don't know that. Has somebody filed a claim for destruction of bank property? I don't know the answer to that. Has someone reported the contents missing? Has someone done an investigation to see if their employees are stealing from the customers? Again, I don't know the—I'm sorry, Your Honor. I don't know the answer to that question. I do know that the issues in this complaint were raised to regulators, I believe, in a separate administrative dispute that the appellant did file. I don't know what the outcome of that proceeding is. I'm just dealing with the four corners of the complaint. And we understand that's the posture that comes to us, but you recognize that this is a posture that's very favorable to the plaintiff. Maybe there are great reasons the bank has that would be backed up by evidence, but if they're not before us, we're left with her allegations and all plausible inferences. So if there are two possibilities, right, bank innocent, bank responsible, we have to—and both are plausible inferences— we have to adopt the one that's most plausible to Ms. Henry at this stage of litigation, right? You agree with that, right? Plausible inferences. You may not think that's a plausible inference, that the bank is somehow grossly negligent, but if we were to find that there was such an inference, right? The bank's position is that the complaint doesn't differentiate between just ordinary lack of care, just ordinary negligence, which the exculpatory clause would be the issue for that claim, and doesn't allege the type of conduct that would go beyond the lack of reasonable care that would go into the gross negligence. But even in your hypothetical reason, plausible reason, how is that still not gross negligence or at least recklessness if they did open, drill a hole to open a safety deposit box that belonged to Ms. Henry and not the presumable client? Banks have procedures they have to follow to make sure they're opening the right deposit box and check IDs and check—there's usually the bank has a key, the other person has a key, and there would be some checks and balances. So even under that scenario, the bank may be reckless in allowing somebody access to a safety deposit box by drilling a hole in it that they have no legal right to. So how are we to draw the favorable inference that you want us to draw even from your scenario? I think from the scenario, Your Honor, of the bank drilling into the safety deposit box, it could simply be just a mistake, and a mistake doesn't rise— And that's why I understand that the district court dismissed a negligence claim. And sort of—so I could see that if this case develops in a way that the only claim that the plaintiff could bring is a negligence claim, then that's already been knocked out, right? But the question is whether you would need to defend against, upon discovery and all the other things, if facts develop showing a reckless— The plaintiff appellant could have amended the complaint with whatever facts that the plaintiff appellant has. Well, we're not talking about that. We're talking about whether she's entitled to discovery. Right, and our position is the way the complaint is drafted in its current state, it doesn't—because it's—other than the allegation that I didn't authorize the drilling, it therefore must be gross negligence, and I think you need something more than that. Okay, I think we understand the bank's position. We thank you very much, Mr. Stanley. Ms. Henry, you have one more minute, and we are going to keep it just to one minute, because that's what we do at the end. So if there's something in particular that came up during our discussion with the bank's lawyer that you'd like to talk about, that's what this time is about. Okay, I believe solely that I felt bullied by the bank, because I couldn't afford attorneys and all of that, even though I came out of pocket and I had retained someone. I just feel like they didn't have adequate—they didn't give me any discovery. They didn't give me any reason for the drilling. There was no reason. They didn't try to work with me in any way to explain to me why, and I feel because the bank themselves and their employees drill into my box, they're responsible for the contents that I lost, which is my life savings that I had saved. Okay. Well, thank you very much to both of you for coming here today. As always, we don't rule right now. The judges will go back. We'll talk about the case, and at a certain point, a written ruling will come out. So we will take the case under advisement, and we thank you both very much for coming today.